IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INFORMATION |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 1:24 CR 00442 |
| BASHEER JONES, | ) ) | Title 18, United States Code, Section 1349 |
| Defendant. | ) ) ) | JUDGE CALABRESE |

FILED
NOV 25 2024
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

GENERAL ALLEGATIONS

At all times relevant to this Information, unless otherwise specified:

Relevant Individuals and Entities

1. Defendant was a resident of Cleveland, Ohio, in the Northern District of Ohio.

2. Defendant was employed by the City of Cleveland (the "City") as an elected Council Member representing Ward 7. Among his other responsibilities, Defendant was responsible for drafting, introducing, and enacting legislation for the City and acting as an ombudsperson for his constituents.

3. Defendant used an email account provided by the City for use in connection with Coconspirator 1's official duties (the "City Email Address"). Coconspirator 1 also used a personal Yahoo email account (the "Personal Email Address"). Yahoo's email servers were located outside the State of Ohio.

4. Coconspirator 1 used the email addresses c**************g@gmail.com (the "Steinberg Email Address") and s***********r@gmail.com (the "Realtor Email Address"). Google's email servers were located outside the State of Ohio.

5. Defendant and Coconspirator 1 were in a romantic relationship beginning in or around late 2018 through at least in or around December 2021.

6. King Management Group and Associates, LLC ("KMGA") was a for-profit business registered in the State of Ohio. KMGA was owned and operated by Coconspirator 1, who was the sole employee.

7. Coconspirator 1 controlled a checking account in KMGA's name at Bank 1, a federally insured financial institution headquartered in or around Columbus, Ohio.

8. Steinberg Enterprises, LLC ("Steinberg") was a for-profit business registered in the State of Ohio. Steinberg was owned and operated by Coconspirator 1, who was the sole employee.

9. Coconspirator 1 controlled a checking account in Steinberg's name at Bank 1.

10. Nonprofit 1 was a non-profit organization operating in Cleveland, Ohio. Nonprofit 1 maintained a bank account at Bank 2, a federally insured financial institution headquartered in or around Pittsburgh, Pennsylvania.

11. Nonprofits 2 through 4 were non-profit organizations operating in or around Cleveland, Ohio.

The East 66th Street Project

12. Beginning in or around January 2020, multiple community stakeholders, including Defendant and Nonprofit 2, began planning infrastructure and other improvements in Ward 7 along East 66th Street between Superior Avenue and Euclid Avenue in Cleveland, to be financed by both public and private funding (the "East 66th Street Project").

13. As part of its involvement in the East 66th Street Project, Nonprofit 2 sought to acquire distressed properties within the East 66th Street Project area for eventual redevelopment.

14. In or around May 2020, a building located on Property 1, a real estate parcel on East 66th Street within the area of the East 66th Street Project, collapsed. The owner of Property 1 at the time of its collapse, Person 1, lived in the Eastern District of North Carolina.

## COUNT 1
(Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349)

The United States Attorney charges:

15. The factual allegations contained in paragraphs 1 through 14 of this Information are incorporated by reference as if stated fully herein.

### The Conspiracy and Scheme to Defraud

16. From in or around December 2018 through in or around June 2021, in the Northern District of Ohio, Eastern Division, Defendant BASHEER JONES did knowingly and intentionally combine, conspire, confederate and agree with Coconspirator 1 and others to devise, and intend to devise, a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, to knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

### Objects and Purposes of the Conspiracy and Scheme

17. The objects and purposes of the conspiracy and scheme were for the conspirators to unjustly enrich themselves by (a) inducing individuals and organizations to transfer money to accounts controlled by Coconspirator 1 based on materially false and misleading statements about the money's intended use; and (b) diverting proceeds for

Defendants' use and the use and benefit of others; and (c) to further and conceal the conspiracy and scheme.

## Manner and Means of the Conspiracy and Scheme

18. It was part of the conspiracy and scheme that:

    a. Defendant, ostensibly acting in his official capacity as a member of Cleveland City Council to benefit the City, facilitated contracts for purported services and real estate deals between local nonprofits and individuals. These transactions appeared to be arms-length transactions to benefit the community when, in actuality, money paid by nonprofits and individuals in the deals ultimately went to accounts and businesses controlled by Coconspirator 1, in order to enrich Defendant, Coconspirator 1, and their designees;

    b. Defendant concealed the fact that Defendant would personally benefit from the transactions because of his relationship with Coconspirator 1.

    c. Defendant and Coconspirator 1 arranged for the funds obtained from victims to enrich Defendant and Coconspirator 1 rather than being used for the purposes Defendant represented to the victims.

## Acts in Furtherance of the Conspiracy and Scheme

19. In furtherance of the conspiracy and scheme, and to achieve the objects and purposes thereof, and to conceal the existence thereof, Defendants performed, and caused to be performed, acts in the Northern District of Ohio, Eastern Division, and elsewhere, including, but not limited to, the following:

*I.  Coconspirator 1's Purported "Consulting" Job at Nonprofit 1*

20. In or around November 2018, Defendant, ostensibly acting in his official capacity as a member of Cleveland City Council for the benefit of the City, met with Nonprofit 1's Chief Executive Officer ("CEO") to discuss Nonprofit 1 hiring a "community

outreach consultant" to increase Nonprofit 1's community engagement in Ward 7, though Nonprofit 1 did not publicly advertise the position.

21. Defendant directed Coconspirator 1 to apply for the consulting position and directed Coconspirator 1 to request payment of $5,000 per month.

22. Acting at Defendant's direction, Coconspirator 1 (presenting herself as KMGA) submitted a proposal to Nonprofit 1, offering to work to increase Nonprofit 1's social media presence, plan and coordinate quarterly community events, increase employee participation at volunteer and community events, and participate in community focus groups. Coconspirator 1 also proposed to work directly with Defendant to have development projects and planning approved. Coconspirator 1 proposed that she would be paid a flat fee of $5,000 per month in exchange for this work. Coconspirator 1 concealed her personal relationship with Defendant from Nonprofit 1.

23. On or about December 4, 2018, as a result of Defendant's direction and Coconspirator 1's written proposal, the CEO of Nonprofit 1 signed the consulting agreement.

24. From in or around December 2018 through April 2019, Coconspirator 1 and Defendant caused Nonprofit 1 to issue to KMGA a total of approximately $25,000 in monthly checks drawn on Nonprofit 1's account at Bank 2. Neither Coconspirator 1 nor anyone else acting on KMGA's behalf provided substantial services to Nonprofit 1 in exchange for the payments.

25. From in or around December 2018 through April 2019, Coconspirator 1 deposited the payroll checks from Nonprofit 1 into KMGA's checking account at Bank 1.

26. In or around September 2019, Coconspirator 1 and Defendant caused Nonprofit 1 to issue to KMGA a handwritten $7,500 check, drawn on Nonprofit 1's account at Bank 2, with

the memo line, "Marketing Activities." Neither Coconspirator 1 nor anyone else acting on KMGA's behalf provided substantial services to Nonprofit 1 in exchange for the payment.

27. On or about September 5, 2019, Coconspirator 1 deposited the $7,500 check into KMGA's Bank 1 account.

28. In or around April 2020, Coconspirator 1 and Defendant caused Nonprofit 1 to issue to KMGA an $8,000 check, drawn on Nonprofit 1's account at Bank 2. Neither Coconspirator 1 nor anyone else acting on KMGA's behalf provided substantial services to Nonprofit 1 in exchange for the payment.

29. On or about April 22, 2020, Coconspirator 1 deposited the $8,000 check into KMGA's Bank 1 account.

*II.    Obtaining an Additional $50,000 from Nonprofit 1*

30. In or around May 2020, Defendant caused Nonprofit 1 to issue an additional $50,000 check to KMGA, drawn on Nonprofit 1's account at Bank 2. Defendant, ostensibly acting in his official capacity as a member of Cleveland City Council for the benefit of the City, met with the CEO of Nonprofit 1. Defendant told the CEO that Defendant had committed to buying gift cards, backpacks, and other items for an unspecified community event to be held in Ward 7 but was unable to purchase them because he had not yet received ward funds to use as a member of City Council. Defendant asked Nonprofit 1 for $50,000 in order to purchase the items. Defendant assured the CEO that the City would reimburse Nonprofit 1 for the $50,000 payment, and the CEO agreed. Defendant directed the CEO of Nonprofit 1 to write the check to KMGA.

31. Defendant picked up the $50,000 check in person.

32. On or about May 27, 2020, Coconspirator 1 deposited Nonprofit 1's $50,000 check into KMGA's Bank 1 account.

33. From on or about May 27, 2020 through on or about June 15, 2020, instead of holding a community event to use the $50,000 and instead of spending the money as represented, Defendant and Coconspirator 1 distributed the majority of the proceeds of the $50,000 check as follows:

   a. $11,427 transferred to Coconspirator 1's personal account;

   b. $10,000 withdrawn in cash and provided to Defendant;

   c. $6,000 sent to Person 2, an associate of Defendant; and

   d. $4,500 sent to Person 3, an associate of Defendant.

34. Despite Defendant's promise that Nonprofit 1 would be reimbursed, the City denied Nonprofit 1's application for reimbursement for the $50,000 check.

*III.    Purchase and Sale of the East 66th Street Property*

35. In or around May 2020, and following the collapse of a building on Property 1, Defendant contacted Person 1 in an attempt to acquire Property 1.

36. In or around August 2020, Defendant corresponded with the City's Department of Building and Housing ("B&H"), inquiring about the demolition cost for the building on Property 1. In response to Defendant's inquiry, B&H staff replied that the cost of demolition for Property 1 was $40,500, and that the owner would be invoiced for the demolition costs.

37. On or about August 6, 2020, Defendant forwarded the B&H email from his City Email Address to Coconspirator 1 at her Realtor Email Address. Coconspirator 1 forwarded Defendant's email exchange with B&H to Attorney 1, an attorney for Person 1, in

7

furtherance of Defendant's efforts to acquire Property 1. Coconspirator 1 stated that "we [the buyer(s)]" would be assuming the $40,500 demolition cost, as well as back taxes due, with the purchase of the Property 1, portraying Property 1 as effectively having liabilities that exceeded its value. Coconspirator 1 asked Attorney 1 to prepare a purchase agreement to include the buyer's assumption of those liabilities, but paired with a $1 purchase price.

38. Defendant and Coconspirator 1 did not finalize the sale with Person 1 in August 2020 and Property 1 remained in Person 1's name.

39. On or about October 23, 2020, Defendant co-sponsored an ordinance before Cleveland City Council to authorize funding and implementation in connection with the East 66th Street Project.

40. On or about June 1, 2021, Defendant spoke with the senior vice president ("SVP") of Nonprofit 2 about Nonprofit 2 acquiring Property 1. Defendant represented to Nonprofit 2 that Person 1 wanted $50,000 to sell Property 1 and that Defendant would reach out to Person 1 on behalf of Nonprofit 2, leading Nonprofit 2 to believe that Defendant, in his capacity as a City councilperson, was acting as an intermediary with the owner and seller, and seeking to assist Nonprofit 2 to acquire the property from the owner. Defendant did not disclose to Nonprofit 2 that Defendant and Coconspirator 1 were planning to acquire Property 1 from Person 1 themselves.

41. Defendant's representations caused Nonprofit 2 to attempt to contact Person 1 directly. However, Nonprofit 2 was unsuccessful, and so Nonprofit 2 continued to rely on Defendant as an intermediary.

42. On or about June 15, 2021, Defendant sent an email from his Personal Email Address to Attorney 2, an attorney for the owner of Property 1, with the subject line,

"Commercial Purchase Agreement." The email included an Agreement of Sale with terms including that Steinberg was to acquire Property 1 from Person 1 for $1 and assume responsibility for all demolition costs back taxes related to the property.

43. As a result of Defendant's email, on or about June 15, 2021, Person 1 electronically signed the Agreement of Sale from his home in North Carolina, transferring Property 1 to Steinberg for $1, then emailed the executed Agreement of Sale back to the Northern District of Ohio.

44. On or about July 12, 2021, Defendant sent an email from his Personal Email Address to the SVP of Nonprofit 2 and Coconspirator 1 (at her Steinberg Email Address), purporting to connect Nonprofit 2 with the owner of Property 1. Defendant and Coconspirator 1 did not disclose Coconspirator 1's name or relationship with Steinberg and Defendant to Nonprofit 2. Defendant and Coconspirator 1 also did not disclose that they were now the beneficial owners of Property 1.

45. On or about July 19, 2021, Defendant and Coconspirator 1 caused the recording of the transfer of Property 1 from Person 1 to Steinberg for a sale price of $1.

46. On or about July 27, 2021, Defendant and Coconspirator 1, through Steinberg, executed a contract selling Property 1 to Nonprofit 2 for $45,000. Coconspirator 1 signed the paperwork on behalf of Steinberg using the name of a family member, K.W., without K.W.'s knowledge or permission, concealing Coconspirator 1's involvement in the transaction. Upon completion of the paperwork, Defendant and Coconspirator 1 caused the transfer of Property 1 from Steinberg to Nonprofit 2 for a sale price of $45,000.

47. Defendant, Coconspirator 1, and Steinberg did not pay the $40,500 demolition costs on Property 1 prior to selling Property 1 to Nonprofit 2.

48. On or about July 29, 2021, Coconspirator 1 deposited into Steinberg's account at Bank 1 a check from Nonprofit 2 to Steinberg in the amount of $42,562, representing the net proceeds of the sale of Property 1 after transaction costs.

49. On or about September 8, 2021, at Defendant's direction, Coconspirator 1 transferred $15,000 from Steinberg's Bank 1 account to Coconspirator 1's personal Bank 1 account via online transfer.

50. On or about September 8, 2021, at Defendant's direction, Coconspirator 1 wrote a $15,000 check to Defendant from Coconspirator 1's personal Bank 1 account, which Defendant then deposited into his personal Bank 2 account.

51. At Defendant's direction, Coconspirator 1 retained approximately $9,681 of the proceeds of the sale for herself and distributed the remainder of the proceeds as Defendant directed.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
(Conspiracy to Commit Honest Services Wire Fraud, 18 U.S.C. § 1349)

The United States Attorney further charges:

52. The allegations contained in paragraphs 1 through 11 are incorporated by reference as if fully stated fully herein.

### The Honest Services Fraud Conspiracy and Scheme

53. From in or around March 2019 through on or about September 8, 2021, in the Northern District of Ohio, Eastern Division, Defendant BASHEER JONES did knowingly and intentionally combine, conspire, confederate and agree with Coconspirator 1 and others to devise and intend to devise a scheme and artifice to defraud and deprive the City and the citizens of the City of their intangible right to the honest services of Defendant, a City official, by means of

material false and fraudulent pretenses, representations, and promises, through bribery, and to transmit and cause to be transmitted by means of wire communication in interstate commerce, any writings, signs, signals, pictures, and sounds for the purpose of executing the scheme and artifice to defraud and deprive, in violation of Title 18, United States Code, Sections 1343 and 1346.

### Purposes of the Honest Services Fraud Conspiracy and Scheme

54. The objects and purposes of the conspiracy and scheme were for the conspirators to unjustly enrich themselves by (a) Defendant using his official position as a City councilperson to undertake official acts to obtain funds for Coconspirator 1 or another coconspirator through a real estate transaction; (b) Coconspirator 1 or another coconspirator paying some of the profits of the real estate transaction to Defendant for his use of his official position to enable those profits; (c) diverting proceeds for conspirators' use and the use and benefit of others; and (d) to further and conceal the conspiracy and scheme.

### Manner and Means of the Honest Services Fraud Conspiracy and Scheme

55. It was part of the conspiracy and scheme that:

a. Defendant agreed with Coconspirator 2 that Coconspirator 2 would obtain title to a distressed property on Superior Avenue in Ward 7 in Cleveland that once housed a convenience store ("Property 2"), and Defendant, using his official position, would have City funds allocated so that Coconspirator 2 could sell Property 2 for a profit, and could in turn pay a share of the proceeds to Defendant.

b. Defendant arranged for Coconspirator 2 to obtain Property 2 for de minimis consideration.

c. Defendant, using his official position, sponsored and passed Cleveland City Council legislation authorizing the City to enter into an agreement with Nonprofit 3 to purchase Property 2 and rehabilitate it.

d. After initially being unable to complete the sale from Coconspirator 2 to Nonprofit 3, Defendant agreed with Coconspirator 1 that Coconspirator 2 would transfer title to Property 2 to Coconspirator 1, and Defendant, using his official position, would have City funds allocated so that Coconspirator 1 could sell Property 2 for a profit, and could in turn pay a share of the proceeds to Defendant.

e. Defendant arranged for Coconspirator 2 to transfer title to Property 2 to Coconspirator 1.

f. Defendant, using his official position, again sponsored and passed Cleveland City Council legislation continuing and modifying the authorization for the City to enter an agreement with Nonprofit 3 to purchase Property 2 and rehabilitate it.

g. When Nonprofit 3's purchase fell through, Defendant directed multiple transfers of the title to Property 2 to subsequent nominee owners while continuing to seek a willing buyer for Property 2.

h. The conspirators furthered the scheme through electronic communications, including communications routed between the Northern District of Ohio and servers outside the State of Ohio.

<u>Acts in Furtherance of the Honest Services Fraud Conspiracy and Scheme</u>

56. In furtherance of the conspiracy and scheme, and to achieve the objects and purposes thereof, and to conceal the existence thereof, a member of the conspiracy performed, and caused to be performed, acts in the Northern District of Ohio, Eastern Division, and elsewhere, including, but not limited to, the following:

57. In or around March 2019, Defendant facilitated the transfer of Property 2 from its original owner to Coconspirator 2. Neither Defendant nor Coconspirator 2 paid the original owners for Property 2, which was in significant disrepair.

58. In or around spring or summer 2019, Defendant, acting in his official capacity and purportedly for the benefit of the City and its citizens, approached the president of Nonprofit 3 about Nonprofit 3 purchasing Property 2 for rehabilitation and redevelopment. Defendant promised to assist with the project and assured the president of Nonprofit 3 that Nonprofit 3 would be reimbursed for the purchase price by the City.

59. On or about June 5, 2019, Defendant, acting in his official capacity and purportedly for the benefit of the City and its citizens, sponsored, and caused to be passed, an emergency ordinance authorizing the City to enter into an agreement with Nonprofit 3 to acquire and renovate Property 2 using Ward 7 Casino Revenue Funds and Neighborhood Capital Funds.

60. On or about September 30, 2019, Coconspirator 2, acting at Defendant's direction, transferred ownership of Property 2 to KMGA via quitclaim deed.

61. On or about May 29, 2020, Defendant, acting in his official capacity and purportedly for the benefit of the City and its citizens, sponsored, and caused to be passed, an additional emergency ordinance relating to Property 2, updating the funding sources for Nonprofit 3 to acquire and renovate Property 2, and extending the time period for that transaction to take place.

62. On or about June 22, 2020, Defendant sent an email from his Personal Email Address to the director of Nonprofit 3 and Coconspirator 1 (at her Realtor Email Address), requesting that Coconspirator 1 and the director of Nonprofit 3 handle finalizing Nonprofit 3's purchase agreement because Defendant was going to be out of town. Defendant indicated that

the sale price of Property 2 was $80,000, with a deposit of $40,000 and the remainder due at closing.

63. In response to Defendant's email, on or about June 24, 2020, the director of Nonprofit 3 replied that Nonprofit 3 was declining to proceed with purchasing Property 2, citing the expense and the potential conflict of interest because of Coconspirator 1's involvement in the transaction.

64. On or about June 29, 2020, Defendant approached Nonprofit 4 about acquiring Property 2 and advised that he had already legislated funding in connection with Property 2. Shortly thereafter, and in response to Defendant's proposal, Nonprofit 4 advised Defendant that it would not be purchasing Property 2 because it was outside the area Nonprofit 4 served, and Nonprofit 4 was not equipped to do rehabilitation projects.

65. On or about April 26, 2021, at Defendant's direction, Coconspirator 1 transferred ownership of Property 2 via quitclaim deed from KMGA to a relative of Coconspirator 2.

All in violation of Title 18, United States Code, Section 1349.

REBECCA C. LUTZKO
United States Attorney

By: *Michael L. Collyer*
Michael L. Collyer
Chief, Criminal Division