UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:24CR00442 |
| Plaintiff, | The Honorable Judge J. PHILIP CALABRESE |
| -vs.- | |
| BASHEER JONES, | SENTENCING MEMORANDUM FOR DEFENDANT |
| Defendant. | |

Basheer Jones ("Jones"), by and through undersigned counsel, provides the attached memorandum for this Court's consideration in advance of the April 1, 2025, sentencing hearing in this case.

Respectfully submitted,

/s/ Fernando O. Mack
FERNANDO O. MACK
Reg. No.: 0062937
1220 W. 6th St., Ste. 203
Cleveland, OH 44113
Phone: (216) 556-9610
Fax: (855) 320-8107
Email: losmacks@msn.com
*Attorney for Defendant*

# SENTENCING MEMORANDUM

I. **STATEMENT OF THE CASE**

On November 25, 2024, Jones was named in a two-count Information which was filed in the Northern District of Ohio. Count 1, Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349, for conduct occurring in or around December 2018 through in or around June 2021; and Count 2, Conspiracy to Commit Honest Services Wire Fraud, in violation of 18 U.S.C. § 1349, for conduct occurring in or around March 2019 through on or about September 8, 2021.

The parties entered into a Criminal Rule 11(c)(1)(B) plea agreement in which Jones agreed to waive the indictment and plead guilty to the two-count information. The parties have no agreement about the sentencing range to be used or sentence to be imposed in this case, other than to stipulate to the computation of the advisory Sentencing Guidelines offense level.

Jones pled guilty to the two-count information on December 19, 2024. The matter was referred for a presentence report and a sentencing hearing is set for April 1, 2025.

II. **LAW AND ARGUMENT**

    A. **The Sentencing Guidelines are Merely Advisory and Not Binding Upon this Honorable Court**

On January 12, 2005, the United States Supreme Court ruled that its Sixth Amendment holding in *Blakely v. Washington,* 124 S. Ct. 2531 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), applies to the Federal Sentencing Guidelines. *United States v. Booker*, 125 S. Ct. 738, 756 (2005). Given the mandatory nature of the Sentencing Guidelines, the Court found "no relevant distinction between the sentence imposed pursuant to the Washington statutes in *Blakely* and the sentences imposed pursuant to the Federal Sentencing Guidelines" in the cases before the Court. *Id.* at 751. Accordingly, and reaffirming its holding in *Apprendi*, the Court concluded that:

> Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

*Id.* at 756.

Based on this conclusion, the Court further found those provisions of the federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. §3553(b)(1), or which rely upon the Guideline's mandatory nature, 18 U.S.C. §3742(e), are incompatible with its Sixth Amendment holding. *Booker*, 125 S. Ct. at 756. Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." *Id*. at 757.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by *Booker*,

> [R]equires a sentencing court to consider Guidelines ranges, *see* 18 U.S.C.A. §3553(a)(4) (Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, *see* §3553(a).

*Booker*, 125 S. Ct. at 757. Thus, under *Booker*, sentencing courts must treat the guidelines as just one of the number of sentencing factors set forth in 18 U.S.C. §3553(a).

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, §3553(a) further directs sentencing courts to consider the following factors:

3

1) "the nature and circumstances of the offense and the history and characteristics of the defendant" (§3553(a)(1));
2) "the kinds of sentences available" (§3553(a)(3));
3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (§3553(a)(6); and
4) "the need to provide restitution to any victims of the offense." (§3553(a)(7)).

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. §3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation" (emphasis added).

Under 18 U.S.C. §3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. *See* U.S.S.G. §5H1. *See also*: *United States v. Naylor*, 359 F.Supp.2d 521, 2005 WL 525409, *2, 2005 U.S. Dist. LEXIS 3418 (W.D. Va. Mar. 7, 2005) (Jones, J.) (concluding that sentence below career offender guideline range was reasonable in part because of defendant's youth when he committed his predicate offenses, he was 17, and noting that in *Roper v. Simmons,* 125 S. Ct. 1183, 1194-96 (2005), the Supreme Court found significant differences in moral responsibility for crime between adults and juveniles).

The directives of *Booker* and §3553(a) make clear that courts may no longer uncritically apply the guidelines. Such an approach would be "inconsistent with the holdings of the merits majority in *Booker*, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker, directing courts to consider all of the §3353(a) factors, many of which the guidelines either reject or ignore." *United States v. Ranum*, 353 F. Supp. 2d 984, 985-86 (E.D. Wisc. Jan. 19, 2005) (Adelman, J.). As another district court judge has correctly observed, any approach which automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime found to be constitutionally infirm in *Booker*." *United States v. Jaber*, 362 F.Supp.2d 365, 2005 WL 605787 *4 (D. Mass. March 16, 2005) (Gertner, J.). See also *United States v. Ameline*, 400 F.3d 646, 655-56 (9th Cir. Feb. 9, 2005) (advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence"), *reh'g en banc granted*, 401 F.3d 1007 (9th Cir. 2005).

The overriding principle and basic mandate of 18 U.S.C. § 3553(a) requires district courts impose a sentence "sufficient, but not greater than necessary," to achieve the four (4) purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2): (a) retribution; (b) deterrence; (c) incapacitation; and (d) rehabilitation. *United States v. Phelps*, 366 F.Supp.2d 580, 587 (E.D. Tenn. 2005).

B.   **Application of the Statutory Sentencing Factors to the Facts of this Case**

*Offense Level*. Jones' base offense level is fourteen (14). Six (6) levels are added because the value of payment received was greater than $40,000. Four (4) levels are added because the offense involves an elected government official. One (1) level is added because there are multiple counts in which Jones plead guilty to Two (2) levels are taken off because Jones meets

the criteria under USSG §§ 4C1.1(a)(1)-(10). After a three-level (3) reduction for acceptance of responsibility, the total offense level is twenty (20).

*Criminal History*. As calculated by the probation department, Jones has a criminal history score of zero (0), which results in him being in criminal history category I.

*Guideline Range*. Pursuant to the guideline provisions, for the above totals Jones' guideline range of imprisonment would be 33-41 months.

*Statutory Factors as Applied to Jones*

Courts should consider the following factors when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

**1. The Nature and Circumstances of the Offense and the History and Characteristics of the Offender**

**(a) Nature and Circumstances of Offense**

Jones has entered a guilty plea through a plea agreement reached in collaboration with the Government. He acknowledges that his conduct was wrong and appreciates the detrimental effect of his actions on his family, the community at large, and himself.

**(b) History and Characteristics of Defendant**

Jones was born in Brooklyn, New York, on October 25, 1984, to Alicia Jones and Anthony Jones. His mother passed away from breast cancer in 2011 at the age of 43. His father, who is in his fifties, resides in Brooklyn, New York. His parents divorced when he was three years old, and he was primarily raised by his mother. Jones is the oldest of four children. Jones had occasional rare visits from his father but for the most part, his father was uninvolved, and he was unaware if his father provided financial assistance for him and his siblings.

As a result of his father's absence, the family struggled financially during his childhood. His mother worked low wage jobs, and she received financial support through public assistance.

They often experienced housing instability, and Jones recalls staying in homeless shelters for the first few years of his life. The family lived in Brooklyn until approximately 1990 when his mother moved the family to Fayetteville, North Carolina, for two years, where his grandmother lived. The family then moved to Ravenna, New York, where his mother had relatives. Jones moved to Cleveland, Ohio when he was twelve years old, where he initially stayed with a good friend of his mother's that they referred to as "aunt." His mother moved to Cleveland when Jones was in high school.

Though Jones never suffered from abuse or neglect in his family home, his younger sisters were sexually abused by the father of his mother's youngest child. That man lived with the family for a while and stole items from them to support a drug habit. Though he suffered no abuse, the frequent moves were stressful and as the oldest child he felt pressure to help take care of his family. The stress caused an "anxiety and ambition" that he felt from a young age to be successful in life and help provide for his family.

Although Jones has never been legally married, he has been in a relationship with Mecca East for eighteen years. They have four children together: Asale Jones (16), Basheer Jones III (14), Asad Jones (8), and Asiyah Jones is 10 months. Jones and East both own two separate residences, but they do often reside with each other. Jones also helped raise four of his brother's children, and notes that he is an uncle to eighteen children.

Jones has significant academic accomplishments which include: Jones is a 2002 graduate of Martin Luther King High School in Cleveland, Ohio. He graduated *cum laude* from Morehouse College in Atlanta, Georgia, with a bachelor's degree in African Studies in May 2006. He began a graduate program at Howard University but was offered a job in radio in Cleveland and left the program after one year. Finally, Jones graduated from the Bayan Islamic

Graduate School at the Claremont School of Theology with a master's degree in theology in 2023 after completion of an online/hybrid program.

Jones' work experience is primarily based in government, community outreach, marketing. Currently, Jones is unemployed. He was last employed by Cleveland City Schools for less than two weeks in 2024. He worked briefly as a substitute teacher from April 19, 2024, to April 30, 2024, but was removed from that roll on November 26, 2024. From October through December 2024, Jones had a 3-month contract with Digital 1 in Cleveland and earned $5,000 a month doing promotion and marketing work. He has also done marketing work for The Muslim American Society of Dallas and a Cleveland health care company called Family First. Additionally, he worked briefly as an advisor for the presidential campaign of Dr. Cornell West in 2024. More significantly, during President Barack Obama's campaign in 2008, Jones became the Regional Field Director for the Democratic National Party. He served in this capacity for six months and during this time, Jones held several rallies and a large youth voter registration drive.

Jones was a member of the Cleveland City Council from January 2018 until January 2022 representing Ward 7. He earned a salary of $85,000 annually. He ran for election for Mayor but lost in the primary on September 14, 2021. Prior to his time on the city council, Jones founded and was the CEO of Be the Change Leadership from 2009 until 2017, under the umbrella of his LLC, Basheer Jones Unlimited. Be the Change Leadership hosted character development workshops in school systems across Ohio. He also began the Basheer Jones Foundation in 2009.

Jones has dedicated his life to uplifting the Cleveland Community and has either created, or been a part of, many programs that has positively impacted thousands across Ohio. He has been an advocate for youth, education, social justice, and civil engagement. Through his many good works, he has been a mentor and role model for students and young people. From the age

of twelve through his adult life, Jones has in some way contributed to the following outreach programs: the BRICK Program, Cleveland Youth Empowerment Programs, Boots on the Ground with 1,000 Black Men, Campout Against Violence, and holiday turkey drives for Ward 7. Jones has advocated for those who have been wrongfully convicted and imprisoned, including Mike Sutton, who was wrongfully convicted and spent nearly two decades in prison. Through his nonprofit entity, Elite Travel Company founded in 2021, he has helped send over 500 students on college tours. The focus of that initiative was exposing students, particularly African American youth, to higher education, especially at Historically Black Colleges and Universities ("HBCUs"). These are just some of the examples showing Jones' character and his impact on his community.

By way of personal letters written to this Court, Jones is supported by his longtime friends and fellow community members. All of the letters express that the case before this Court does not tell the full story about Jones. The letters highlight Jones' long, and voluminous, history of community outreach, community engagement, and the love and care he has shown his community, and the people in it, from a very early age. He has the support of people that have known him his whole life and view him as family, people that he has personally helped along their own journeys, and people that have otherwise been affected by his many good works in their community. The letters have been written by individuals that will attest to his character, and his many positive contributions to society. (See Exs. A through G – Letters from Latrice Evans, Crystal Carter, Shalah Turner, Marie Laster, Nickisha Johnson, Joseph Clark, and Lynnette Adams). Also attached is more detailed information referencing his commitment to his community. (See Ex. H – Basheer Jones: Lifelong Commitment to Serving Cleveland and Accountability for Past Actions).

9

2. **The Need for the Sentence Imposed to Promote Certain Statutory Objectives:**

   **(a) to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

Under the sentencing guidelines, the imprisonment range is 33 to 41 months. There is no minimum mandatory statutory sentence, and the maximum term of imprison is 20 years. Jones is also eligible for probation.

3. **The Kinds of Sentences Available**

In *Booker*, the Supreme Court severed and excised 18 U.S.C. § 3553(b), the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guidelines range. *Booker,* 125 S. Ct. at 756. This renders the sentencing guidelines advisory. *Id.* Based on the circumstances of this case, imposition of the minimum guideline sentence would exceed the statutory directives.

Based upon a total offense level of 20 and a criminal history category of I, the guideline imprisonment range is 33 months to 41 months. In light of *Booker* no longer being mandatory, Jones is hopeful that this Court will consider a term of probation in lieu of a term of imprisonment.

4. **The Sentencing Range Established by the Sentencing Commission**

In support of probation, the probation officer has identified Jones's personal history and characteristics as influences for a downward variance in view of the 3553(a) sentencing factors. *See* paragraph 123 of the Final PSR. Specifically, the probation department cites Jones' many good works in his community comprising of multiple speaking engagements, including at high

school graduations, a 2018 "Campout Against Violence," holiday turkey drives for Ward 7, and his "Boots on the Ground" voter mobilization campaign.

### 5. The Need to Avoid Unwarranted Disparities

Although the median length of imprisonment imposed was a less than guideline range sentence of twenty (20) months for similarly situated defendants, probation would still be sufficient to satisfy the 3553(a) factors. *See* paragraph 125 of the Final PSR.

### 6. The Need to Provide Restitution to any Victims of the Offense

Jones knows that he is responsible for the restitution amount of owed $143,598.47 in this case, and he will make every effort to make those affected by his actions whole.

## **CONCLUSION**

Based on the preceding, Basheer Jones respectfully moves this Honorable Court to impose a minimum term of probation as allowed by law. Doing so will promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and avoid an unwarranted sentencing disparity.

/s/ Fernando O. Mack
FERNANDO O. MACK
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 25, 2025, a true and accurate copy of the following **Sentencing Memorandum for Defendant** was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Fernando O. Mack